**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donald TROISE, Defendant-Appellant.**

**No. 73–1017**

**Summary Calendar.**\*

United States Court of Appeals,
Fifth Circuit.

Aug. 10, 1973.

Certiorari Denied Dec. 3, 1973.
See 94 S.Ct. 574.

---

\* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of

New York, et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Melvyn Kessler, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Lawrance B. Craig, III, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This appeal is taken from Appellant's conviction by a jury trial of possessing with intent to distribute 613 pounds of marijuana in violation of 21 U.S.C.A. § 841(a)(1). Though Appellant raises three assignments of error, we consider only two worthy of discussion. These are that the court below erred in denying Appellant's (i) motion to suppress evidence on grounds that the search and seizure violated his rights guaranteed by the Fourth Amendment and (ii) motion for mistrial based upon the prosecutions elicitation of impermissible and incurable statements from its witness during direct examination. Having carefully reviewed the record we find both to be without merit and thus affirm.

A brief statement of the facts will suffice. In early April of 1972 United States Customs agents were informed by a reliable source that contraband would be imported into the United States through the Tavernier area of the Florida Keys. The information provided was that a Boston whaler-type boat would sail to the Yucatan Peninsula, pick up the contraband, and return to the United States in tow behind a larger vessel. Customs agents placed an address in Miami under surveillance where they observed several automobiles, included among them, a gold Oldsmobile convertible. On July 27, 1972 further information was received from another informant that the registration number on the small vessel used in the smuggling operation would be MS 10 HS. The Customs agents made an attempt to locate the vessel with this identification number and actually sighted it on more than one occasion. Shortly thereafter they received information that the Boston whaler had departed on the smuggling mission. On August 12, 1972 the United States Customs air detail sighted a Boston whaler-type boat whose description matched their information in

tow behind a larger vessel on a course for Key West, Florida. The following day, Customs agents observed what appeared to be the same boat being towed behind a gold Oldsmobile convertible headed north on Highway U.S. 1. The Customs agents ordered the vehicle over to the side of the road at which time they testified there was a strong odor of marijuana emanating from under the canvas covering the boat. A search revealed the presence of 613 pounds of marijuana in the cockpit area of the boat.

### Propriety Of The Detention

The United States District Judge below, after conducting an evidentiary hearing on the question of suppression, found the detention and the subsequent search and seizure to be justified under what has become known as a "border search". This term describes certain statutorily created and judicially recognized situations where the dictates of the Fourth Amendment are relaxed to allow warrantless searches, see United States v. McDaniel, 5 Cir., 1972, 463 F. 2d 129; United States v. Wright, 5 Cir., 1973, 476 F.2d 1027; United States v. Thompson, 5 Cir., 1973, 475 F.2d 1359 [1973]; United States v. DeLeon, 5 Cir., 1972, 462 F.2d 170; United States v. Maggard, 5 Cir., 1971, 451 F.2d 502; United States v. Hill, 5 Cir., 1970, 430 F.2d 129; United States v. Arroyave, 5 Cir., 1973, 477 F.2d 157 [1973], the rationale being that on balance mild intrusions upon privacy sometimes must give way to the serious and legitimate interest of the government with respect to enforcing along thousands of miles of open border valid customs, immigration and related laws. These "border searches", however, have been limited to, and remain, a carefully defined class of cases. See Almeida-Sanchez v. United States, 1973, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 [1973]; United States v. Storm, 5 Cir., 1973, 480 F.2d 701 [1973]. Because we conclude from the record that Appellant's detention was supported by probable cause, we find it unnecessary to reach the question of whether the search and seizure fell within the aegis of a "border search".[1]

Here the Customs agents had pieced together information from multiple informants that a gold Oldsmobile convertible and a blue and white Boston whaler-type vessel with the registration number MS 10 HS were going to be used in a scheme to illegally enter the country with contraband. The agents had consciously maintained a surveillance on the Miami address where they had observed the Oldsmobile convertible parked, initiated a search for the Boston whale-type vessel and maintained air surveillance of the coast line around Key West. Upon sighting the Boston whaler in tow behind a larger vessel and heading for Key West, they began a surveillance of the Tavernier area of the Florida Keys, where they observed the boat in tow behind the gold Oldsmobile convertible headed north on U.S. 1. Viewing as we must the totality of the circumstances, we think the agent's prior knowledge of the vehicles and its occupants were easily sufficient to constitute probable cause for the belief that when the vehicle was stopped it carried contraband narcotics. Once stopped, of course, the record is clear that the agents were able to detect a strong odor of marijuana emanating from the vessel, given probable cause, the law is well settled that, because of the mobility of motor vehicles, the possibility of flight, and subsequent destruction of evidence, officers may search where they have reasonable cause to believe a crime has been committed. Chimel v. California, 1969,

---

1. At the suppression hearing below the trial judge also found the existence of probable cause to support the search and seizure, but seemed to base his denial of the motion to suppress primarily on his finding that the search and seizure qualified as a "border search". Our holding merely affirms the finding of probable cause making it unnecessary for us to address the "border search" question.

395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685; Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543.

### Denial Of Mistrial

On direct examination by the prosecution of the Customs agent who made the arrest the following dialogue transpired:

Q. After you observed the occupants of the car get out, what did you next have occasion to observe?

A. Well, at this moment I, after everyone had got out, I asked who owned the boat, who owned the car, who owned the trailer. No one replied.

An objection immediately followed, coupled with the lengthy admonition to the jury by the trial judge to disregard the import of agent Thompson's response.[2]

It is Appellant's contention that the trial Judge's attempt at cautioning and instructing the jury was insufficient to cure the prejudicial effect the remark had on the minds of the jurors. It is argued that since one of the essential elements the government was required to prove was that of guilty knowledge, the jurors would infer that since Appellant knew what was in the boat he would not say that he was the owner. We are unpersuaded.

It has long been the settled rule in this Circuit that error in the ad-mission of evidence under most circumstances may be cured by withdrawing the evidence from the jury's consideration and instructing the jury to disregard it. United States v. Pritchard, 5 Cir., 1969, 417 F.2d 327; Hill v. United States 5 Cir., 1966, 363 F.2d 176; Conner v. United States, 5 Cir., 1962, 322 F.2d 647, cert. denied, 1964, 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed. 178; Fahning v. United States, 5 Cir., 1962, 299 F.2d 579. While we recognize that there is an exception to this rule in cases where the remark is so highly prejudicial as to be incurable by the trial court's admonition, we don't view this as such a situation. See United States v. Kidd, 5 Cir., 1971, 446 F.2d 1385. Our reading of the context in which the impermissible testimony was elicited convinces us that agent Thompson's remark was inadvertent and not responsive to question.[3]

After reviewing the totality of the testimony received, we cannot conclude that the contested statement, though impermissible, had such a prejudicial effect on the minds of the jury that it could not, and was not totally cured by the Judge's cautionary instruction.[4]

All of Appellant's assignments [5] of error are without merit.

Affirmed.

2. The instruction to the jury was as follows:

Ladies and gentlemen, the last remark was not responsive to the question and it should not be considered by you at all. The answer about any conversations this man had with these two persons.

Some folks say it is impossible for jurors to strike something from their minds which has been discussed in the court. I can only tell you what you are doing is weighing evidence, deciding whether or not the Government has overcome the presumption of innocence by proof beyond every reasonable doubt.

Judges do this all day long and all week long, say, "I cannot consider this because it is inadmissible."

The question is, does the other evidence weigh so heavily to establish the charges beyond every reasonable doubt, so I will tell you not to consider it, the last statement made by this witness regarding some questions he asked people out at the scene.

3. We find nothing in the record to support Appellant's argument that the response by agent Thompson was calculated to make a strong impression on the jury.

4. It is our opinion that, had the trial Judge further cautioned the jury to disregard any inferences that could have been drawn from the agent's statement, as Appellant argues he should have, it would only have served to draw further attention to the statement thus compounding the problem.

5. Another assignment of error alleged by Appellant in this appeal challenged the trial Judge's instruction to the jury concerning actual and constructive possession. We conclude this contention to be without merit and decline discussion.