**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Charles Daryll BRYANT and James Bob Impson, Defendants-Appellants.**

**No. 73-2257.**

United States Court of Appeals,
Fifth Circuit.

March 18, 1974.

Rehearing and Rehearing En Banc Denied April 16, 1974.

---

Melvyn Carson Bruder, Dallas, Tex., for defendants-appellants.

Roby Hadden, U. S. Atty., Dennis R. Lewis, Asst. U. S. Atty., Tyler, Tex., for plaintiff-appellee.

Before COLEMAN, AINSWORTH and GEE, Circuit Judges.

AINSWORTH, Circuit Judge:

Bryant and Impson were jointly charged and tried on a three-count indictment for violations of 18 U.S.C. §§ 2312, 2313 and 2314, respectively, relative to transporting and receiving a vehicle—a front-end loader—in interstate commerce.[1] Bryant was found guilty on Count 2, Impson on Counts 1 and 2, Count 3 having been dismissed by the Government against both defendants. Both defendants appeal.

On July 15, 1970, Road Machinery, Inc. purchased from Allis-Chalmers Manufacturing Company a front-end loader bearing the following identifying numbers: Model No. 645, Serial No. 24SO2984, Transmission No. 26624, Axle No. 3–70–0006. The vehicle was assembled at the Allis-Chalmers plant at Deerfield, Illinois, and shipped to Road Machinery, Inc. at Doraville, Georgia. On October 12, 1970, an Allis-Chalmers front-end loader, Model No. 645, was determined to be missing from the Road Machinery plant at Macon, Georgia. Fresh wheel tracks indicated that the vehicle had been driven from the front yard area where it had been previously placed. The local police were notified that the vehicle was missing. On May 12, 1971, an Allis-Chalmers front-end loader, bearing the same transmission and axle numbers as those on the vehicle sold to Road Machinery in July 1970 but with the serial number missing, was recovered in a rural area in the vicinity of McKinney, Texas, when a Texas highway patrolman stopped a large truck in which appellant Bryant was a passenger. The reason for stopping the truck was that it was pulling a trailer carrying an excessive and oversized load, an Allis-Chalmers front-end loader, and the trailer lacked the requisite motor vehicle inspection certificate. Just minutes prior to this incident the same highway patrolman had stopped appellant Impson who was driving a Lincoln Continental automobile. The front-end loader was later determined to be the same vehicle stolen from Georgia. Both appellants were subsequently arrested and charged.

At the trial Impson presented no testimony nor did he elect to testify. Bryant, however, testified and introduced testimony of several witnesses in

---

1. 18 U.S.C. § 2312:
   "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."
   18 U.S.C. § 2313:
   "Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five five years, or both."
   The count under 18 U.S.C. § 2314 was withdrawn.

an attempt to establish that he was unaware that the front-end loader had been stolen.

Appellants make numerous contentions on appeal, none of which warrants the granting of new trials or reversal of their convictions.[2] We affirm.

*The evidence was sufficient to prove identity of the stolen vehicle.*

■■ In order to sustain a conviction under the pertinent statutes the stolen vehicle and the vehicle found in possession of the accused must be identical. While there must be some evidence of common characteristics other than color, make and model of the vehicle, in order to establish proof, identity of the engine serial number is not required. United States v. Johnson, 5 Cir., 1969, 413 F.2d 1396; Watkins v. United States, 5 Cir., 1969, 409 F.2d 1382. The Government's evidence showed that in the place where the engine serial number plate would normally be affixed there were instead four holes and that the number plate is easily removable with a screwdriver or tin snips, as are the axle and transmission number plates. The axle serial number plate is affixed to the rear face of the main housing and is accessible only by crawling beneath the vehicle; the transmission serial number plate is similarly affixed to the lower outside face of the transmission. Although the serial number plates could conceivably be interchanged, this is not probable; it would result in damage to the light aluminum plates which are fastened by metal drive screws that tap themselves as they are driven in. A jury could rea-

sonably have concluded that the less accessible, less obviously placed axle and transmission number plates were inadvertently overlooked by the person or persons who removed the engine serial plate. The make and model as well as the axle and transmission numbers of the recovered vehicle were identical to those of the stolen vehicle. Under the circumstances, we consider this ample proof of identity.

*The evidence was sufficient to establish Bryant's guilt.*

■ Appellant Bryant contends that the Government failed to prove his possession, either actual or constructive, of the stolen vehicle, a necessary element for conviction under 18 U.S.C. § 2313. We do not agree. Approximately six weeks prior to the arrest, appellants hauled the No. 645 front-end loader on a truck to the property of James Graham in the vicinity of Branch, Texas, for repairs to be performed by Graham. Bryant rode in the cab of the truck driven by Impson. When they arrived at their destination both Bryant and Impson attempted to unload the vehicle. However, it was necessary to secure additional assistance, and Bryant and Impson were left with the vehicle while Graham telephoned for wrecker service, which arrived about 45 minutes later. When the unloading was eventually accomplished, it was Bryant who paid the mechanic for his services, although Bryant testified that the money was furnished by Impson for that purpose. The loader was eventually repaired by Graham and plans were made to pick it

2. Appellants make the following contentions on appeal:
1. The evidence was insufficient to prove that the vehicle seized, possession of which was attributed to the defendants, was the vehicle alleged to have been stolen.
2. The evidence was insufficient to establish Bryant's guilt.
3. The Government was improperly allowed to adduce evidence of an extraneous offense, that is, the purported theft of a motor vehicle known as a "backhoe."
4. The backhoe transaction was inadmissible as evidence against Bryant.

5. The trial court improperly excluded relevant, material and exculpatory evidence offered by Bryant.
6. Evidence that Impson had previously been convicted of counterfeiting tainted his convictions.
7. Testimony that the bill of sale for the loader tendered by Impson to Bryant was not valid was outside the scope of rebuttal as to Impson and prejudiced him.
8. The defendants were entitled to, and the court should have granted, a severance to each defendant.

up. On May 12, 1971, Impson in the company of Bryant rented a tractor-trailer and a driver from Karel Pekarek. An arrangement was made for the hired driver, Clifton Eugene Forrest, to follow Bryant and Impson to the vicinity of Branch, Texas, where they would load the vehicle on to the trailer and haul it to Sulphur Springs, Texas. With the assistance of Bryant, Forrest secured the loader to a trailer by the use of a chain and boom. Bryant and Forrest then proceeded toward Sulphur Springs, Texas, but were stopped and arrested when they reached the vicinity of Mc-Kinney, Texas. The district court in a very thorough and comprehensive charge properly instructed the jury on the types of possession cognizable under the law in the following language:

> "The law recognizes two kinds of possession, actual possession and constructive possession. A person who knowingly had direct physical control over a thing at a given time is then in actual possession of it. A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

> "The law recognizes also that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

> "You may find that the element of possession, as that term is used in these instructions, is present if you

find beyond a reasonable doubt that the accused had actual or constructive possession, either alone or jointly with the others."

■ Viewing the record and inferences in the light most favorable to the Government we cannot say that the evidence was insufficient to convince a jury that Bryant was in possession of the front-end loader. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942). Mere possession, of course, unaccompanied by knowledge of the possessor that the vehicle is stolen, is insufficient to sustain a conviction under 18 U.S.C. § 2313, and the trial court so instructed. In order to show lack of such knowledge Bryant attempted to prove that he relied on Impson's representations that he was the lawful owner of the vehicle, and introduced for that purpose a bill of sale dated March 31, 1971 showing Impson as the purchaser and J. L. Williams and James L. Wilson, partners, doing business as Universal Constructors, as sellers. In rebuttal the Government offered evidence from various sources tending to show that the purported sale was a sham and a fraud and so obviously fictitious that Bryant could not reasonably have been deluded by it. The jury's verdict demonstrates that it did not accept Bryant's explanation of his participation in the handling of the vehicle and thus ascribed guilty knowledge to him.[3]

*Evidence of an extraneous offense relating to a "backhoe" was properly admitted against Impson and Bryant.*

The Government's evidence showed that on or about December 12, 1970, a backhoe, a heavy tractor, was stolen

---

3. Other circumstances bear on this issue. Bryant testified that he had never been in Macon, Georgia. However, he had been employed by Wheeling Auto Crushers until May 1971, and as late as March or April 1970 Bryant was known to have been in Brunswick, Georgia, where the company was then operating. Wheeling used equipment similar to, but smaller than, the stolen front-end loader. In October 1970, Road Machinery Company at Macon, Georgia (the plant from which the loader was stolen that month) repaired another front-end loader for Bryant's brother-in-law, Roy Miller, the owner of Wheeling Auto Crushers. The business card which Miller presented when the repairs were made shows both his name and that of Bryant's. In the latter part of 1970, Bob Impson was seen at Macon, Georgia, at the wrecking yard of Wheeling by one of its employees.

from the B & D Company at Dallas, Texas. In late December 1970 or early January 1971, appellant Impson telephoned James R. Graham and informed him that he had a backhoe which he was interested in selling. Graham contacted a friend, Johnny Broyles, who was desirous of purchasing a backhoe, and a meeting between Graham, Broyles and Impson was subsequently arranged by Graham to be held at a cafe in McKinney, Texas. Bryant was also present at the cafe during the meeting. All four men then rode out to where the backhoe was parked, about three miles from McKinney, Texas. Impson drove his car accompanied by Bryant. Impson then drove the truck-trailer on which the backhoe was loaded to Broyles' place of business where the four men again met. Negotiations for the sale were subsequently completed and Broyles purchased the equipment. In May 1971 the backhoe was identified by its rightful owner to be the one stolen from the B & D Company and it was subsequently seized in Denton County, Texas, by a deputy sheriff. Over objection of appellants the district court admitted the evidence pertaining to the backhoe for the limited purpose of showing state of mind or intent of the defendants, and so charged the jury.

■ Appellants contend that there was a fatal flaw in the backhoe evidence inasmuch as that vehicle had moved only in *intrastate* commerce within the State of Texas, whereas *interstate* commerce is a crucial element of a prosecution under the pertinent statutes, citing United States v. Broadway, 5 Cir., 1973, 477 F. 2d 991. In *Broadway* there was a lack of similarity between mere endorsement of forged money orders and endorsement plus cashing of forged money orders. The latter offense was the offense charged and cashing or uttering was necessary to put the money orders in the flow of interstate commerce, an essential element for conviction. Without the element of transportation the prior acts constituted no offense, state or federal.

In the instant case, the prior act of defendants required no additional element of interstate transportation to constitute an offense, although a state offense. In *Broadway* "the government's direct proof was slim" on the issues of intent and guilty knowledge, 477 F.2d at 994, and the other offenses were "offered to shore up a weak case as to intent and guilty knowledge." 477 F.2d at 995. This is not ·true in the present case, and although Impson appears to have been the spokesman and leader, the evidence is nonetheless conclusive that Bryant, as well as Impson, knew that the equipment was stolen.

■ Generally the admission of prior acts of misconduct of a defendant is not permitted. However, we have long subscribed to the exception to that rule which permits the introduction of proof of prior acts to establish knowledge or intent where such an element is an essential element of the offense charged, such prior acts are similar, and are not too remote in time from the offense charged. Weiss v. United States, 5 Cir., 1941, 122 F.2d 675; Gilstrap v. United States, 5 Cir., 1968, 389 F.2d 6.

We stressed the necessity for similarity of extraneous offenses in United States v. Broadway, *supra*. However, the similarity contemplated by the exception is a matter of relevancy and is "judged by the degree in which the prior acts approaches near identity with the elements of the offense charge. There is no necessity for synonymity but there must be substantial relevancy for purposes other than to show the probability that the person committed the offense being tried because he is a man of criminal character." United States v. Kasouris, 5 Cir., 1973, 474 F.2d 689, 692. *See also* United States v. Mancuso, 5 Cir., 1970, 423 F.2d 23, in which we found the nature of nine prior offenses involving either forgery or false pretense similar to a Dyer Act offense with which defendant was

charged, and upheld the introduction in evidence of those offenses for the limited purpose of showing intent.

We have no difficulty here in finding similarity between the prior acts and the offenses charged. The backhoe and front-end loader road tractors are both characterized as heavy equipment. They were both determined to be missing at approximately the same time. It is apparent that the testimony regarding the missing backhoe bore heavily on the question of criminal intent, an element necessary for the Government to establish under each count of the indictment, and we find no infirmity in its admission in evidence.

*There was no impropriety in the exclusion of so-called exculpatory material offered by Bryant.*

■■ Bryant attempted to offer evidence showing various transactions by Impson in connection with the front-end loader. By using the vehicle as collateral, and furnishing a promissory note executed by him and a co-signer, Clarence Stark, Impson obtained a loan of $12,000 from the Southwestern Investment Company. Impson and Stark defaulted on payment and Southwestern filed suit for the amount due, alleging in its petition its belief that Impson's purported purchase of the vehicle was fictitious. Impson also obtained theft insurance on the vehicle and thereafter filed a claim against the insurer alleging theft. Based on a defense of Impson's fraudulent misrepresentations relative to the ownership of the loader, the insurer obtained a judgment against Impson. Thus Bryant attempted to show Impson's claim of exclusive ownership of the loader and Bryant's reliance thereon. These transactions occurred subsequent to the time when Bryant was shown to have possessed the vehicle. Acceptance or rejection of evidence is a matter within the trial court's broad discretion, which will not be disturbed on appeal except on a showing of abuse. United States v. Abshire, 5 Cir., 1972, 471 F.2d

116; United States v. Garr, 5 Cir., 1972, 461 F.2d 487. We find no such abuse here.

*Evidence that Impson had previously been convicted was harmless error.*

During cross-examination by Government counsel Bryant was asked:

Q. Have you ever had any more transactions with Mr. Impson regarding a front-end loader or backhoe or a similar piece of equipment?

Bryant replied:

A. I haven't had any transactions with Mr. Impson for the last six months since he was counterfeit convicted.

Counsel for Impson requested that the remark be stricken and that the court declare a mistrial. The trial judge immediately admonished the jury to disregard for all purposes the answer of the witness. Then, out of the presence of the jury, the judge reprimanded Bryant and cautioned him not to refer again to any misconduct or conviction of Impson. The court refused to declare a mistrial.

■■ Appellants contend that the instruction could not eradicate the prejudice inherent in such evidence. We do not agree. *See, for example* United States v. Pritchard, 5 Cir., 1969, 417 F.2d 327, in which evidence of a prior conviction of a defendant elicited from him by the Government was held harmless error where the jury was instructed to disregard it. It is a well-settled rule in this circuit that evidence erroneously admitted may be cured in most circumstances by withdrawing it from the jury's consideration and instructing the jury to disregard it, as was done in this case. *See* United States v. Troise, 5 Cir., 1973, 483 F.2d 615; United States v. Pritchard, *supra*; Hill v. United States, 5 Cir., 1966, 363 F.2d 176; Conner v. United States, 5 Cir., 1963, 322 F.2d 647; Fahning v. United States, 5 Cir., 1962, 299 F.2d 579; Helton v. United States, 5 Cir., 1955, 221 F.2d 338. The Supreme Court has declined to

hold that all errors, even constitutional errors, "regardless of the facts and circumstances, must always be deemed harmful." Chapman v. State of California, 386 U.S. 18, 21, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, 709 (1967). Where such evidence, in the opinion of the court after reading the record, has little impact on the mind of the jury and the evidence of guilt is overwhelming, the error may be considered harmless. *See* Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); United States v. Steinkoenig, 5 Cir., 1973, 487 F.2d 225. This is such a case, and in light of the fact that the trial judge withdrew the evidence from the jury and directed them to disregard it, the error was harmless.

*The Government's rebuttal evidence relative to the purported bill of sale furnished to Impson was properly admitted.*

■ As already indicated, Bryant contends that he relied in good faith on Impson's representations of ownership of the front-end loader. It was appropriate under the circumstances for the Government to rebut Bryant's assertion of innocence by producing evidence which showed not only that the bill of sale was fraudulent but, because of the transparency of the fraud, that it was unreasonable to believe that Bryant relied on it. Appellants contend, however, that in regard to Impson the evidence was prejudicial and outside the scope of rebuttal. We do not agree. Appellants concede in their brief on appeal that the court instructed the jury that the evidence should be considered only against Bryant. In view of this instruction and the overwhelming evidence of Impson's guilt, we find no merit to this contention.

*The defendants were not entitled to severance.*

■ Under Rule 14 of the Federal Rules of Criminal Procedure, separate trials may be granted if defendants can show that prejudice would result from their joinder. The existence of prejudice depends largely on the facts and circumstances of each case. Therefore, the granting or denial of a severance is a matter of discretion within the province of the trial court, which ruling will rarely be disturbed unless the movant makes a positive showing that he has been prejudiced by the ruling. Tillman v. United States, 5 Cir., 1969, 406 F.2d 930, 934; United States v. Kershner, 5 Cir., 1970, 432 F.2d 1066, 1071; United States v. Edwards, 5 Cir., 1974, 488 F.2d 1154, 1160; United States v. Pacheco, 5 Cir., 1974, 489 F.2d 554. We have examined appellants' allegations of prejudice under the various issues presented, and have found nothing more than a theory that separate trials might afford a better chance of acquittal. This is no justification for the granting of a severance. Tillman v. United States, *supra,* 406 F.2d at 934.

■ The trial was a lengthy one, lasting seven days, the witnesses were numerous and the documentary evidence was abundant. As a consequence, objections from all parties abounded and the district judge had a tedious job keeping the trial within the proper bounds to assure the defendants a fair trial. A fair trial, not a perfect one, is all they were entitled to, United States v. Harden, 5 Cir., 1972, 469 F.2d 65; United States v. Calles, 5 Cir., 1973, 482 F.2d 1155, and in our opinion this is what they received.

Affirmed.