**UNITED STATES of America, Appellee,**

v.

**Robert Charles STEVIE, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Raymond Lee REYNOLDS, Appellant.**

**Nos. 77–1335, 77–1424.**

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 31, 1977.

Decided Nov. 17, 1977.

Rehearing and Rehearing En Banc Granted Jan. 6, 1978.

On Petition for Rehearing En Banc Aug. 15, 1978. See 582 F.2d 1175.

---

Mark W. Peterson, Minneapolis, Minn., for appellants, and on brief, for Robert Charles Stevie.

Joseph S. Friedberg, Minneapolis, Minn., for appellant, Raymond Lee Reynolds.

Joseph T. Walbran, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Andrew W. Danielson, U. S. Atty., Minneapolis, Minn., on the brief.

Before GIBSON, Chief Judge, and HEANEY and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

In separate trials on stipulated facts, the appellants were found guilty by the District

Court [1] of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). Approximately 250 pounds of marijuana concealed in suitcases were seized in a search of the station wagon in which appellants were riding. On appeal they contend that this evidence, which was the corpus delicti of the case, should have been suppressed because it was the fruit of an unreasonable seizure of the automobile and an illegal search of its contents in violation of the Fourth Amendment.

Following the filing of briefs in this appeal the Supreme Court rendered its decision in *United States v. Chadwick*, 1 U.S. 433, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), holding that the search of a double-locked footlocker was subject to the Fourth Amendment's warrant requirement when it was seized on probable cause but not searched until later at the station house. The applicability of *Chadwick* was argued on appeal. Because of this, we deem it appropriate to set forth the facts of this case in some detail.

On February 9, 1976, in response to a tip from an informant who had provided reliable information in the past, Officer John Boulger and Agent Markus Kryger of the Drug Enforcement Administration Task Force were at the Minneapolis-St. Paul International Airport to conduct a surveillance of incoming passengers. Their intention was to observe one James Erickson, who, according to their information, had traveled to Phoenix, Arizona, to purchase a large quantity of marijuana and was to arrive by air from either Phoenix or Las Vegas, Nevada. As a result of prior occurrences, the agents knew of James Erickson and that he had connections with Theodore Luciow. They further were aware that Theodore Luciow's twin brother, Anthony, had been arrested in possession of approximately 300 pounds of marijuana contained in an Avis rental car rented in Arizona by Raymond Reynolds. At that time reliable informants told them that Anthony Luciow

had gone to Arizona to purchase this marijuana from Reynolds.

Among passengers embarking from a Las Vegas incoming flight shortly before midnight, two young, white males caught the agents' attention because they were acting "[i]n a suspicious manner" and were "apprehensive of things around them." The two men, appellants Stevie and Reynolds, did not communicate with each other but maintained a distance of approximately fifty feet between themselves. In addition, it was noted that Stevie was walking faster than the other passengers.

When they reached the lower level of the airport, Stevie proceeded to the baggage claim area and Reynolds approached the Avis car rental counter, neither speaking to the other. Stevie removed two large suitcases from the baggage carousel. Agent Kryger observed that these appeared to be heavy. At that point, without pretense of secrecy, Agent Kryger walked up next to Stevie and observed the name "M. Roberts" and a Phoenix address on the bags' nametags. After looking warily at Agent Kryger, Stevie engaged a uniformed skycap to handle the luggage and returned for three more large, new suitcases. He gave directions to the skycap and then walked over to the Avis counter and spoke to Reynolds for the first time since the agents had commenced observing them. Their gestures indicated that the conversation pertained to the two agents, who continued to observe them until Officer Boulger went out to his car in the airport parking lot. Stevie then left the building and joined the luggage handler who had taken the bags directly to the Avis parking lot and loaded them into a rented Oldsmobile station wagon.

After Reynolds left the Avis counter area, Agent Kryger spoke to the person at the counter and learned from her that the automobile had been rented to an R. Reynolds of Phoenix, Arizona, who signed his name "Raymond L. Reynolds."

---

1. The Honorable Donald D. Alsop, United States District Court for the District of Minnesota.

When Reynolds and Stevie left the airport parking lot they were followed by Agent Kryger and Officer Boulger in separate vehicles. The two agents were in radio contact with each other and with the DEA office. They exchanged information as to Reynolds' name and his connection with the Luciow brothers. In addition they learned from their office that the middle initial of the Ray Reynolds involved in the case of Anthony Luciow was "L." As they followed the rented automobile on a four-lane express highway, they observed that the passenger in the car was continually facing the rear and the driver was frequently looking into his rearview mirror. Although Agent Kryger testified their initial intention was to follow the appellants to their destination, the agents determined this would be impracticable and so stopped them on the highway.

Agent Kryger approached the driver's side and asked the driver for his identification. The driver produced a driver's license which revealed that he was Raymond L. Reynolds of Phoenix, Arizona. Officer Boulger established that the passenger's identity was Robert Stevie. Thus, neither of the identities matched the name "M. Roberts" on the suitcase nametags. As Agent Kryger was standing at the window of the car examining the driver's license he smelled the distinctive odor of marijuana.[2]

At this point the agents instructed Reynolds and Stevie to get out of the car and placed them under arrest. The agents opened one of the suitcases that had been placed on the floor of the rear area of the rental station wagon.[3] Inside they found wrapped bricks of a vegetable substance later determined to be marijuana.

This appeal presents the following issues for consideration: (1) whether the initial stop of the rental car was justified, (2) whether there existed probable cause to search the suitcase, and (3) whether the warrantless search of the suitcase at the scene is valid in light of the recent Supreme Court decision of *United States v. Chadwick, supra.*

I.

Appellants' initial contention is that the agents did not have "specific and articulable facts" as required by *Terry v. Ohio*, 392 U.S. 1, 20–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to justify stopping the car for an investigatory stop. They argue that the facts of this case present insufficient indicia of criminal activity to justify the agents' actions in stopping appellants' vehicle.

*Terry* requires a dual inquiry into the reasonableness of an investigatory stop. The reviewing court must determine: "(1) whether the facts warranted the intrusion on the individual's Fourth Amendment rights, and (2) whether the scope of the intrusion was reasonably related 'to the circumstances which justified the interference in the first place.'" *Carpenter v. Sigler*, 419 F.2d 169, 171 (8th Cir. 1969). The District Court applied this standard and held the facts warranted the agents' suspicions that criminal activity might be afoot. We agree.

The agents were at the airport as a result of the tip of an informer, whose information had proven reliable in the past, that a sizable shipment of marijuana was about to arrive there. Although they did not see the party they were expecting, they independently observed and noted the suspicious conduct of the two appellants. The fact that Stevie and Reynolds consciously avoid-

---

**2.** Agent Kryger testified that he smelled the odor of marijuana when Reynolds rolled down the car window to produce his driver's license. Officer Boulger testified that he also smelled the odor when he opened the front door on the passenger's side to allow Stevie to get out of the cold winter air after the two appellants had been requested to step out of the car. Although the parties produced experts whose testimony conflicted as to whether the odor of marijuana packaged as this was could be detected, the District Court found that "Kryger was able to and did detect the odor of marijuana" when Reynolds rolled down the car window.

**3.** According to Agent Kryger the search occurred within five minutes after they stopped the car.

ed communication became significant when it later became apparent that they knew each other and in fact left the airport in the same automobile. Additionally, Agent Kryger noted that the suitcases were large and very heavy, and Stevie and Reynolds acted suspiciously when Kryger conspicuously appeared to be curious. Most significantly, the name on the automobile rental form was one the agents were aware of from prior drug activity and belonged to a person who may have been associated with the party they were expecting to observe. Finally, there was appellants' furtive conduct in their automobile. Altogether, there were more than sufficient objective facts known to the police officers to justify an investigatory stop for further inquiry. *See Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *United States v. Bailey*, 547 F.2d 68 (8th Cir. 1976); *United States v. Geelan*, 509 F.2d 737 (8th Cir. 1974), *cert. denied, Moore v. United States*, 421 U.S. 999, 95 S.Ct. 2395, 44 L.Ed.2d 666 (1975); *Orricer v. Erickson*, 471 F.2d 1204 (8th Cir. 1973); *Carpenter v. Sigler, supra.*

## II.

■ The second half of the *Terry* test—whether the scope of the intrusion was reasonably related to the circumstances justifying the interference in the first instance—must be answered in the affirmative. The stop was proper, as was the demand that appellants provide identification. As a result of this reasonable and limited intrusion, two additional facts became known to the officers when they requested identification from Stevie and Reynolds. The first was that the name on the luggage nametag previously observed at the airport did not match that of either of the appellants. It is not uncommon for drug traffickers to travel under assumed names.[4] Of even more crucial significance, however, the officers detected the odor of marijuana emanating from the interior of the automobile.[5]

This Court has held that the presence of the odor of marijuana is sufficient to establish probable cause for purposes of a search warrant. *Miller v. Sigler*, 353 F.2d 424 (8th Cir. 1965). *See also United States v. Solis*, 536 F.2d 880 (9th Cir. 1976); *cf. Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948) (odors may be evidence of probable cause necessary to support a search warrant). Similarly, it has been held that the odor of marijuana may be used to establish probable cause to arrest, *see United States v. Bronstein*, 521 F.2d 459, 463 (2d Cir. 1975), *cert. denied*, 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976), and to search a mobile vehicle, *see United States v. Stricklin*, 534 F.2d 1386 (10th Cir.), *cert. denied*, 429 U.S. 831, 97 S.Ct. 92, 50 L.Ed.2d 95 (1976); *United States v. Johnston*, 497 F.2d 397 (9th Cir. 1974); *United States v. Troise*, 483 F.2d 615 (5th Cir.), *cert. denied*, 414 U.S. 1066, 94 S.Ct. 574, 38 L.Ed.2d 471 (1973); *United States v. Diamond*, 471 F.2d 771 (9th Cir.), *cert. denied*, 412 U.S. 932, 93 S.Ct. 2751, 37 L.Ed.2d 161 (1973). Similarly, the odor of marijuana, together with other strong circumstantial evidence, provided both probable cause to arrest and to search the automobile in which Stevie and Reynolds were riding.

## III.

At oral argument, appellants contended that the suitcases within the station wagon were protected from a warrantless search by *United States v. Chadwick, supra.* The parameters of *Chadwick* will no doubt be fully developed in subsequent cases. It is sufficient in this case to say that we detect no intent to circumscribe more narrowly the existing automobile exception to the warrant requirement, and in fact the Supreme Court in *Chadwick* clearly recognized and distinguished the prior cases establishing the exception.

4. This form of discrepancy along with an informant's report has been held sufficient to support a finding of probable cause to arrest. *United States v. Scott*, 545 F.2d 38, 40 (8th Cir.

1976), *cert. denied*, 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 784 (1977).

5. *See* note 2 and accompanying text *supra.*

In *Chadwick* federal narcotics agents arrested three persons outside a Boston train station after they had placed a large footlocker in the trunk of their car. At the time of the arrest, the car's trunk was still open and the engine had not been started. The three were taken to the federal building along with the, as yet unopened, footlocker. An hour and a half after the arrests the agents opened the double-locked footlocker even though "[f]acilities were readily available in which the footlocker could have been stored securely" and it was "not contended that there was any exigency calling for an immediate search." 433 U.S. at 15, 97 S.Ct. at 2480. Inside the footlocker they found large amounts of marijuana.

The Supreme Court opinion in *Chadwick* made it clear that "the footlocker's brief contact with Chadwick's car" did not give rise to its consideration as an automobile search exception to the warrant requirement. 433 U.S. at 111, 97 S.Ct. at 2483–84. It then reaffirmed the unique treatment given to automobiles in a Fourth Amendment context:

> Our treatment of automobiles has been based in part on their inherent mobility, which often makes obtaining a judicial warrant impracticable. Nevertheless, we have also sustained "warrantless searches of vehicles . . . in cases in which the possibilities of the vehicle's being removed or evidence in it destroyed were remote, if not non-existent." *Cady v. Dombrowski*, 413 U.S. 433, 441–442, [93 S.Ct. 2525, 2528, 37 L.Ed.2d 706] . . (1973); *accord, South Dakota v. Opperman*, . . . 428 U.S. [364] at 367, [96 S.Ct. 3092, at 3095, 49 L.Ed.2d 1000] . . . ; see *Texas v. White*, 423 U.S. 67, [96 S.Ct. 304, 46 L.Ed.2d 209] . . (1975); *Chambers v. Maroney; Cooper v. California*, 386 U.S. 58 [87 S.Ct. 788, 17 L.Ed.2d 730] . . . (1967).
>
> The answer lies in the diminished expectation of privacy which surrounds the automobile:
>
> "One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. . . . It travels public thoroughfares where both its occupants and its contents are in plain view." *Cardwell v. Lewis*, 417 U.S. 583, 590, [94 S.Ct. 2464, 2469, 41 L.Ed.2d 325] . . . (1974) (plurality opinion).
>
> Other factors reduce automobile privacy. "All States require vehicles to be registered and operators to be licensed. States and localities have enacted extensive and detailed codes regulating the condition and manner in which motor vehicles may be operated on public streets and highways." *Cady v. Dombrowski*, 413 U.S., at 441 [93 S.Ct. 2525 at 2528] . . . Automobiles periodically undergo official inspection, and they are often taken into police custody in the interests of public safety. *South Dakota v. Opperman*, 428 U.S., at 368, [96 S.Ct. 3092 at 3096] . . .

433 U.S. at 112–113, 97 S.Ct. at 2484. We therefore conclude that the right to conduct a warrantless automobile search has not been diminished by *Chadwick* and that traditional tests may be applied to determine the reasonableness of the scope of a challenged search.

*Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2525, 37 L.Ed.2d 706 (1973), upheld a search of the locked trunk of an automobile that had been disabled in an accident and towed away at the direction of the local police. In *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), the accused was arrested on a heroin charge. One week after the arrest, the police searched the car without a warrant and found evidence in the glove compartment. The Court held that the search was not unreasonable because the reason for the search was closely related to the reason the car had been stopped and seized. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), upheld a "thorough" warrantless probable cause search of an automobile that produced two revolvers from a compartment under the dashboard. The search upheld in *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975)

(per curiam) extended to the area between the seats of the car. *See also Scher v. United States*, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938) (warrantless search of automobile trunk for bootleg whiskey); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (68 bottles of whiskey found behind upholstery of automobile seats); *United States v. Collins*, 532 F.2d 79 (8th Cir.), *cert. denied*, 429 U.S. 836, 97 S.Ct. 104, 50 L.Ed.2d 102 (1976) (bank robbery evidence found in trunk).

Relying upon these decisions, appellate courts have held that the exception to the warrant requirement extends to briefcases, suitcases, and other containers found inside automobiles. *See, e. g., United States v. Giles*, 536 F.2d 136 (6th Cir. 1976); *United States v. Canada*, 527 F.2d 1374 (9th Cir. 1975), *cert. denied*, 429 U.S. 867, 97 S.Ct. 177, 50 L.Ed.2d 147 (1976); *United States v. Tramunti*, 513 F.2d 1087, 1100–04 (2d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975); *United States v. Anderson*, 500 F.2d 1311, 1315 (5th Cir. 1974) ("a contemporaneous search of containers in the vehicle which could reasonably be employed in the illicit carriage of contraband is also constitutionally permissible."); *United States v. Soriano*, 497 F.2d 147 (5th Cir. 1974) (en banc), *reaffirmed sub nom. without published opinion, United States v. Aviles*, 535 F.2d 658 (1976), *cert. denied*, 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977); *United States v. Evans*, 481 F.2d 990 (9th Cir. 1973). *Cf. United States v. Matlock*, 558 F.2d 1328 (8th Cir. 1977) (briefcase seized while passenger was attempting to remove something from it).

The search in *United States v. Tramunti, supra*, was very similar to the one that took place in this case. Following the arrest of two persons who were riding in an automobile, police officers opened a suitcase they had seen placed in the back seat of the car and which had appeared to be very heavy. Although the arrestees were handcuffed and were no longer in a position affording access to the suitcase, the Second Circuit upheld the on-the-scene search of the suitcase as one based upon probable cause. 513 F.2d at 1104. Once probable cause was established the same factors that support the automobile exception to the warrant requirement supported the warrantless search of the suitcase located inside the automobile. The Court found that the search was reasonable for Fourth Amendment purposes because it was "immediate, on-the-spot, and of a container reasonably thought to contain narcotics." *Id.*

█ Similar exigent circumstances exist in the case before this Court. The automobile was stopped on a busy highway shortly after midnight. The suitcase was in the open rear area of a station wagon. The odor of marijuana appeared to come from the suitcase. These factors supplied sufficient justification for an immediate search of the luggage in the station wagon at the scene. The marijuana seized following the search was properly admitted as evidence.

Affirmed.

HEANEY, Circuit Judge, dissenting.

The majority properly finds that the initial investigatory stop of the rental car was justified and that there was probable cause to search the automobile. It errs, however, in holding that a warrantless search of the suitcase was justified. In my judgment, *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), controls. In that case, the Supreme Court states:

[T]he Government insists that the search was reasonable because the footlocker was seized contemporaneously with respondents' arrests and was searched as soon thereafter as was practicable. The reasons justifying search in a custodial arrest are quite different. When a custodial arrest is made, there is always some danger that the person arrested may seek to use a weapon, or that evidence may be concealed or destroyed. To safeguard himself and others, and to prevent the loss of evidence, it has been held reasonable for the arresting officer to conduct a prompt, warrantless "search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he

might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. [752], at 763, [89 S.Ct. 2034, at 2040, 23 L.Ed.2d 685.] See also *Terry v. Ohio*, 392 U.S. 1, [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968).

Such searches may be conducted without a warrant, and they may also be made whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence. The potential dangers lurking in all custodial arrests make warrantless searches of items within the "immediate control" area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved. *United States v. Robinson*, 414 U.S. 218, [94 S.Ct. 467, 38 L.Ed.2d 427] (1973); *Terry v. Ohio, supra.* However, warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the "search is remote in time or place from the arrest," *Preston v. United States*, 376 U.S. [364], at 367, [84 S.Ct. 881, at 883, 11 L.Ed.2d 777,] or no exigency exists. Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.[9]

Footnote nine reads as follows:

Of course, there may be other justifications for a warrantless search of luggage taken from a suspect at the time of his arrest; for example, if officers have reason to believe that luggage contains some immediately dangerous instrumentality, such as explosives, it would be foolhardy to transport it to the station house without opening the luggage and disarming the weapon. See, *e. g., United States v. Johnson*, 467 F.2d 630, 639 (CA 2 1972).

*Id.*, 433 U.S. at 15, 97 S.Ct. at 2485.

Here, no exigency existed. The officers had no reason to believe that the suitcases contained dangerous instrumentalities or that the evidence would be concealed or destroyed. The officers had control of the suitcases. They could have conveniently taken them to their headquarters and obtained a search warrant.

I recognize that two justices of the Supreme Court would approve the search made here. My reading of the majority opinion, however, does not convince me that their views represent those of the majority.

I, therefore, dissent.