UNITED STATES of America, Appellee,

v.

Robert Charles STEVIE, Appellant.

UNITED STATES of America, Appellee,

v.

Raymond Lee REYNOLDS, Appellant.

Nos. 77–1335, 77–1424.

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1978.

Decided Aug. 15, 1978.

Rehearings and Rehearings En Banc
Denied Oct. 18, 1978.

Mark W. Peterson, Friedberg & Mauzy, argued and filed brief, Minneapolis, Minn., for appellants, Stevie and Reynolds.

Joseph T. Walbran, Asst. U. S. Atty. (argued), Minneapolis, Minn., Andrew W. Danielson, U. S. Atty., Minneapolis, Minn., on brief for appellee, U. S.

Before GIBSON, Chief Judge, and LAY, HEANEY, BRIGHT, ROSS, STEPHENSON and HENLEY, Circuit Judges, en banc.

HEANEY, Circuit Judge.

This case is before the Court pursuant to a petition for a rehearing en banc. In an opinion issued on November 17, 1977, a panel of this Court held that the initial stop of the appellants' rented station wagon was justified, that probable cause existed to search one of the suitcases located in the rear of the station wagon and that the warrantless search of the suitcase at the scene of the arrest was valid under *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). *United States v. Stevie,* 578 F.2d 204 (8th Cir. 1977). We leave the panel opinion untouched except insofar as it upholds the warrantless search of the appellants' suitcase.

## I.

The background needed for the consideration of this case is furnished by the panel opinion's detailed recitation of the facts, which we quote below.

On February 9, 1976, in response to a tip from an informant who had provided reliable information in the past, Officer John Boulger and Agent Markus Kryger of the Drug Enforcement Administration Task Force were at the Minneapolis-St. Paul International Airport to conduct a surveillance of incoming passengers. Their intention was to observe one James Erickson, who, according to their information, had traveled to Phoenix, Arizona, to purchase a large quantity of marijuana and was to arrive by air from either Phoenix or Las Vegas, Nevada. As a result of prior occurrences, the agents knew of James Erickson and that he had connections with Theodore Luciow. They further were aware that Theodore Luciow's twin brother, Anthony, had been arrested in possession of approximately 300 pounds of marijuana contained in an Avis rental car rented in Arizona by Raymond Reynolds. At that time reliable informants told them that Anthony Luciow had gone to Arizona to purchase this marijuana from Reynolds.

Among passengers embarking from a Las Vegas incoming flight shortly before midnight, two young, white males caught the agents' attention because they were acting "[i]n a suspicious manner" and were "apprehensive of things around

them." The two men, appellants Stevie and Reynolds, did not communicate with each other but maintained a distance of approximately fifty feet between themselves. In addition, it was noted that Stevie was walking faster than the other passengers.

When they reached the lower level of the airport, Stevie proceeded to the baggage claim area and Reynolds approached the Avis car rental counter, neither speaking to the other. Stevie removed two large suitcases from the baggage carousel. Agent Kryger observed that these appeared to be heavy. At that point, without pretense of secrecy, Agent Kryger walked up next to Stevie and observed the name "M. Roberts" and a Phoenix address on the bags' nametags. After looking warily at Agent Kryger, Stevie engaged a uniformed skycap to handle the luggage and returned for three more large, new suitcases. He gave directions to the skycap and then walked over to the Avis counter and spoke to Reynolds for the first time since the agents had commenced observing them. Their gestures indicated that the conversation pertained to the two agents, who continued to observe them until Officer Boulger went out to his car in the airport parking lot. Stevie then left the building and joined the luggage handler who had taken the bags directly to the Avis parking lot and loaded them into a rented Oldsmobile station wagon.

After Reynolds left the Avis counter area, Agent Kryger spoke to the person at the counter and learned from her that the automobile had been rented to an R. Reynolds of Phoenix, Arizona, who signed his name "Raymond L. Reynolds."

When Reynolds and Stevie left the airport parking lot they were followed by Agent Kryger and Officer Boulger in separate vehicles. The two agents were in radio contact with each other and with the DEA office. They exchanged information as to Reynolds' name and his connection with the Luciow brothers. In addition they learned from their office that the middle initial of the Ray Reyn-olds involved in the case of Anthony Luciow was "L." As they followed the rented automobile on a four-lane express highway, they observed that the passenger in the car was continually facing the rear and the driver was frequently looking into his rearview mirror. Although Agent Kryger testified their initial intention was to follow the appellants to their destination, the agents determined this would be impracticable and so stopped them on the highway.

Agent Kryger approached the driver's side and asked the driver for his identification. The driver produced a driver's license which revealed that he was Raymond L. Reynolds of Phoenix, Arizona. Officer Boulger established that the passenger's identity was Robert Stevie. Thus, neither of the identities matched the name "M. Roberts" on the suitcase nametags. As Agent Kryger was standing at the window of the car examining the driver's license he smelled the distinctive order of marijuana.

At this point the agents instructed Reynolds and Stevie to get out of the car and placed them under arrest. The agents opened one of the suitcases that had been placed on the floor of the rear area of the rental station wagon. Inside they found wrapped bricks of a vegetable substance later determined to be marijuana.

*Id.* at 206–207 (footnotes omitted).

## II.

■ The panel opinion upheld the search of the suitcase under the automobile exception to the Fourth Amendment warrant clause. *Id.* at 1171–1172. In reaching its decision, it considered the application of the Supreme Court's decision in *Chadwick* which held that, absent exigent circumstances, a warrant must be obtained prior to a search of an arrestee's luggage once it comes under the exclusive control of the arresting officer. *See United States v. Chadwick, supra,* 433 U.S. at 15–16, 97 S.Ct. 2476; *United States v. Schleis,* 582 F.2d 1170 (8th Cir. 1978). The panel opin-

ion distinguished *Chadwick* on the ground that, in *Chadwick*, the footlocker was *outside* an automobile at the time it was seized and, in this case, the suitcase was *inside* an automobile at the time of the search and seizure. It concluded that the right to conduct a warrantless automobile search was not circumscribed by *Chadwick* since the Court in *Chadwick* clearly recognized and reaffirmed the unique treatment given to automobiles in a Fourth Amendment context. *Id.* at 1171.

While we agree with the panel opinion's analysis that *Chadwick* does not circumscribe the automobile exception, we cannot agree that the automobile exception, and not *Chadwick*, applies to the facts of this case. We hold that an individual's expectation of privacy in the contents of luggage—which was established by the Court in *Chadwick*[1]—is entitled to the protection of the Fourth Amendment whether the luggage is located *inside* or *outside* an automobile.[2]

### III.

The fact that the search of the suitcase occurred in an automobile at the time of the appellants' arrest does not automatically validate the search.

### A.

■ The government first seeks to justify the search of the suitcase under the automobile exception to the Fourth Amendment warrant clause. The Supreme Court "has recognized significant differences between motor vehicles and other property which permit warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts," because of both the inher-

ent mobility, and the diminished expectation of privacy, in a motor vehicle. *United States v. Chadwick, supra* at 12, 97 S.Ct. at 2484. It is clear in this case that the law enforcement officers could legitimately immobilize the station wagon and seize the suitcases located in the rear pursuant to the automobile exception. It does not necessarily follow, however, that the contents of the suitcases located in the station wagon are subject to search under the automobile exception, anymore than they would be if the officers had seized them any other place. *United States v. Chadwick, supra* at 17 n.1, 97 S.Ct. 2476 (Brennan, J., concurring). As the Supreme Court has noted, "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." *Coolidge v. New Hampshire*, 403 U.S. 443, 461, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564 (1971).

■ In *Chadwick*, the Supreme Court rejected the government's contention that luggage should be analogous to automobiles for Fourth Amendment purposes. *United States v. Chadwick, supra* 433 U.S. at 12–13, 97 S.Ct. 2476; *United States v. Schleis, supra*, at 1170. In reaching its decision, the Court contrasted the privacy interests in luggage with those in an automobile.

The factors which diminish the privacy aspects of an automobile do not apply to respondents' footlocker. Luggage contents are not open to public view * * * nor is luggage subject to regular inspections and official scrutiny on a continuing basis. Unlike an automobile, whose primary function is transportation, luggage is intended as a repository of personal effects. In sum, a person's expectations

---

1. The search of the appellants' suitcase took place on February 9, 1976, over a year before the Supreme Court issued its decision in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). We have today held that the decision in *Chadwick* presents no question of retroactivity and, thus, we need not reach that issue here. *United States v. Schleis*, 582 F.2d 1166, 1173–1174 (8th Cir. 1978).

2. We stress that in so holding, we do not limit the automobile exception to the Fourth Amendment warrant clause. Searches of motor vehicles—such as the search of a U-Haul truck for stolen loading equipment in *United States v. Young*, 567 F.2d 799 (8th Cir. 1977)—will continue to be upheld under the automobile exception.

of privacy in personal luggage are substantially greater than in an automobile. *Id.* at 13, 97 S.Ct. at 2484.

The Court concluded that an individual has a legitimate expectation that the contents [3] of luggage will remain free from public examination and, thus, absent an exigency, it is unreasonable to conduct a warrantless search of an arrestee's luggage. *Id.* at 11, 97 S.Ct. 2476.

The Ninth Circuit, in sustaining the search of a suitcase taken from a car, has held that *Chadwick* does not apply to luggage taken directly from an automobile.[4] *United States v. Finnegan*, 568 F.2d 637, 641 (9th Cir. 1977). We cannot read *Chadwick* in this manner. The Court in *Chadwick* clearly held that an individual has a legitimate expectation of privacy in the contents of luggage. Every factor which the Court cites in support of its holding remains present whether the luggage is *inside* or *outside* an automobile. Moreover, no Supreme Court decision directly supports the Ninth Circuit's position, and every Court of Appeals decision supporting the position was decided prior to the Supreme Court's decision in *Chadwick*.

■ We conclude, therefore, that the appellants' expectation of privacy in the contents of the suitcase was not dissipated because they placed it in the rear of a station wagon.[5]

## B.

■ The government next seeks to justify the search on the ground that *Chadwick* does not apply to a search that is not remote in time and place to the arrest. We do not find this argument to be persuasive. As this Court today states in *United States v. Schleis, supra*:

Chadwick establishes that the critical factor is the extent to which the property is within the control of the law enforcement officers, rather than the amount of time or space between the arrest and the search. *United States v. Ester*, 442 F.Supp. 736, 739 (S.D.N.Y.1978). Once the officers obtain exclusive control, the requirement for a warrant under *Chadwick* is triggered. Ordinarily, the initial seizure at the time of arrest would be sufficient to place the property within the officer's exclusive control. To otherwise interpret *Chadwick* "would enable police and federal agents to circumvent the *Chadwick* holding by encouraging them to conduct a search of luggage at the time and location of the seizure in

---

**3.** We note that the individual's expectation of privacy is in the contents of the luggage and not in the luggage itself. As the Court stated in *Chadwick*,

[r]espondents' principal privacy interest in the footlocker was, of course, not in the container itself, which was exposed to public view, but in its contents. A search of the interior was therefore a far greater intrusion into Fourth Amendment values than the impoundment of the footlocker. Though surely a substantial infringement with respondents' use and possession, the seizure did not diminish respondents' legitimate expectation that the footlocker's contents would remain private.

*United States v. Chadwick, supra*, 433 U.S. at 13–14 n.8, 97 S.Ct. at 2485.

**4.** The Ninth Circuit also reached a similar conclusion in *United States v. Ficklin, Jr.*, 570 F.2d 352 (9th Cir. 1978), *petition for cert. filed*, 46 U.S.L.W. 3741 (U.S. May 17, 1978) (No. 77–1635), where it sustained a search of plastic and burlap bags located in a car trunk. The *Ficklin* case might be distinguished, however, on the ground that there is not as great an expectation of privacy "in plastic and burlap bags (which the officer immediately recognized as the type customarily used to haul marijuana)". *Id.* at slip op. 3. We need not reach that question here.

**5.** Other Courts have also interpreted *Chadwick* to require a warrant prior to a search of luggage seized from an automobile. In *United States v. Vallieres*, 443 F.Supp. 186 (D.Conn. 1977), the Court suppressed the contents of two closed suitcases seized from the trunk of an automobile in the course of an arrest. It upheld the search of an unzipped suitcase because its contents were in plain view. *See United States v. Pugh*, 566 F.2d 626 (8th Cir. 1977) (upholding the search of an open briefcase found in an automobile under the plain view exception). In *Sanders v. State*, 262 Ark. 595, 559 S.W.2d 704 (1977), *petition for cert. filed*, 46 U.S.L.W. 3680 (U.S. April 19, 1978) (No. 77–1497), the Court invalidated the search of a suitcase taken from a taxi during the course of an arrest.

conjunction with a lawful arrest." Note, *Criminal Procedure—Search and Seizure—Persons Lawfully Arrested for Alleged Possession of Narcotics have a Privacy Interest in a Footlocker in Their Possession at the Time of Their Arrest which is Protected by the Warrant Clause of the Fourth Amendment. United States v. Chadwick,* 6 Am.J.Crim.Law 81, 94 (1978) [.]

*Id.* at 1172.

In this case, the appellants were under arrest and were outside of the station wagon when the officers searched the suitcase inside the rear of the station wagon.[6] Moreover, the government has demonstrated no exigent circumstances which required that the suitcase be searched at the scene of the arrest. The suitcase had clearly come under the exclusive control of the officers and, thus, the requirement for a warrant under *Chadwick* was triggered.

## IV.

In sum, the warrantless search of the appellants' suitcase cannot be justified under the automobile exception or as a search incident to arrest. Thus, the search was violative of the appellants' Fourth Amendment rights.

Reversed.

GIBSON, Chief Judge, dissenting.

After carefully considering Judge Heaney's opinion and reconsidering the panel opinion in this case, published at 578 F.2d 204, I would affirm the convictions. As determined by the panel opinion, the search of the suitcase should be upheld as within the automobile exception to the warrant requirement. *United States v. Finnegan,* 568 F.2d 637, 641–42 (9th Cir. 1977).

I have little to add to the panel opinion but will correct the apparent misapprehension of the majority as to the distinction the panel drew between *Chadwick* and the present case. The majority view *Chadwick*

as involving seizure of a footlocker *outside* an automobile while the present case involves a search and seizure *inside* an automobile. Actually, in both cases the luggage was inside an automobile when seized. However, in *Chadwick*, the Government conceded that no automobile search was involved because the seizure occurred immediately after the footlocker was placed in the automobile's trunk and before the trunk had been closed or the engine started. This fleeting contact was not sufficient to bring the automobile search exception into play.

By contrast, the seizure in this case occurred on a four-lane express highway. The suitcases had been transported a considerable distance in the automobile by the defendants. The search was conducted immediately after the automobile was stopped. Thus the present case is distinguishable from *Chadwick* by the significant contact the suitcases had with the automobile. *United States v. Chadwick,* 433 U.S. at 22–24, 97 S.Ct. 2476 (Blackmun, J., dissenting). The reasons justifying warrantless automobile searches apply, in my opinion, to searches of containers found inside the automobile. *See* cases cited in *United States v. Chadwick,* 433 U.S. at 23 n.4, 97 S.Ct. 2476 (Blackmun, J., dissenting).

There is one other element of the majority's decision that disturbs me. The majority opinion in this case and in *United States v. Schleis,* 582 F.2d 1166 (8th Cir. to be filed concurrently), seem carefully crafted to suggest that warrants will now be required for a search of most personal property that has been reduced to the exclusive control of law enforcement officers. The dictum in the panel opinion in *United States v. Haley,* 581 F.2d 723 (8th Cir. 1978) carries this suggestion one step further. It correctly upholds the warrantless opening of a zippered leather container found in plain view in a car, but only because of the exigent circumstance of an apparently injured man needing assistance. To assume

---

6. The suitcases were no longer within the appellants' immediate area of control and, thus, were not subject to search under *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and its rationale of protecting officers from possible physical harm and preventing possible destruction or concealment of evidence.

that the expectation of privacy in a zippered bag approaches the expectation of privacy in a locked footlocker is carrying the analogy beyond its reasonable limits. The entire opinion in *Chadwick* is premised on the obvious expectation of privacy enjoyed by a person who double-locks a footlocker.

As properly noted in *Chadwick*, the warrant clause of the Fourth Amendment "protects people from unreasonable government intrusions into their legitimate expectations of privacy" but how much "legitimate" expectation of privacy should a person be permitted to enjoy in the concealment and transportation of contraband? If *Chadwick* is viewed as applying to all closed pieces of luggage and containers that are subject to personal modes of transportation, then the enforcement of the criminal laws will be severely diminished by the inability of the law enforcement officers to discover and apprehend those who are in the pursuit of lawless activities. The additional time, energy, and cost in attempting to locate a magistrate and secure a warrant cannot help but impair and diminish the effective operation of law enforcement officers. This is not to say that the Fourth Amendment is not a prized personal constitutional right enjoyed by free people, but the Fourth Amendment proscription is "against unreasonable searches and seizures." In this situation I do not think that the defendant had, should have had, or could have had any "legitimate" expectation of privacy in the concealment of marijuana in a closed piece of luggage being transported on a public highway of this country. I view this search as reasonable.

The application of *Chadwick* to personal property other than locked luggage remains to be decided in this circuit. I do not agree with the statement in *United States v. Marchand*, 564 F.2d 983, 991–92 (2d Cir. 1977), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978), suggesting that police must now obtain a warrant before opening a wallet found in plain view and extracting a driver's license therefrom. The language is particularly regrettable since it had no impact on the outcome of *Marchand's* appeal and is therefore dictum.

In light of my conclusion that the instant case involves an automobile search not governed by *Chadwick*, I express no views on the retroactive application of that decision. I would affirm the convictions of Stevie and Reynolds.