UNITED STATES of America,
Plaintiff-Appellee,

v.

Steve VICKERS, Defendant-Appellant.

No. 78–5462.

United States Court of Appeals,
Sixth Circuit.

Argued April 10, 1979.

Decided May 23, 1979.

W. Henry Haile, Nashville, Tenn., for defendant-appellant.

Hal D. Hardin, U. S. Atty., Nashville, Tenn., Margaret M. Huff, Nashville, Tenn., for plaintiff-appellee.

Before ENGEL and MERRITT, Circuit Judges, and PECK, Senior Circuit Judge.

MERRITT, Circuit Judge.

Defendant was convicted in District Court of possessing marijuana with intent to distribute it and of conspiring to do so. On appeal he argues that marijuana taken during a warrantless search of a locked footlocker should not have been admitted into evidence. We agree and reverse his conviction on the authority of *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

After receiving an informant's tip, officers of the Tennessee Bureau of Criminal Identification and the Drug Enforcement Administration began surveillance of a parked tractor trailer, which, according to the informant, contained marijuana. As the informant predicted, the defendant approached the tractor trailer and proceeded, out of sight of the officers, to unload a footlocker from the truck and to place it in the trunk of his car. He drove away, followed by agents, and was stopped after driving a few miles. An agent took the key out of the ignition of defendant's car and opened the vehicle's trunk to look for a footlocker or like container in which, according to the informant, approximately 100 pounds of marijuana would be secreted.

As expected, the trunk contained two locked footlockers. Officers opened the footlockers and discovered the marijuana. Defendant was then arrested. His pretrial motion to suppress was denied, and he was convicted.

In *Chadwick,* the Supreme Court held unreasonable the warrantless search of a locked footlocker which had been taken from defendant's parked car at the time of defendant's arrest. The arrest occurred when police, who had probable cause to believe that the footlocker contained marijuana, saw defendant load the locker into his car at a railroad station parking lot. Officers removed the locker from the car and took it to the federal building in Boston where they opened it without a warrant. The Court held that, although exigent circumstances justified the warrantless seizure of the trunk, those circumstances abated once the footlocker came into the officers' "exclusive control" and could no longer justify a warrantless search of the footlocker's contents. 433 U.S. at 13, 97 S.Ct. at 2484. The Court distinguished the automobile search cases [1] on the ground that "a person's expectations of privacy in personal luggage are substantially greater than in an automobile." *Id.*

 We can see no meaningful distinction between this case and *Chadwick.* Here, as in *Chadwick,* the officers had taken the footlockers into their "exclusive control" before they conducted the warrantless search. Thus, "there was not the slightest danger that the footlocker or its contents could have been removed before a valid search warrant could be obtained." *Id.* The government argues, however, that the footlocker search should be treated merely

as part of the lawful search of defendant's automobile, because the search was undertaken while the footlockers were still in contact with the automobile. We cannot accept this argument. The government's position would divest the defendant of his expectation of privacy in the locked footlockers merely because he transported them in an automobile. The simple act of transporting a footlocker in a car, in our view, does not give rise to circumstances any more exigent than those in *Chadwick,* nor does it undermine the privacy rights created by the footlocker's padlock.[2] *See United States v. Johnson,* 588 F.2d 147 (5th Cir. 1979); *United States v. Stevie,* 582 F.2d 1175 (8th Cir. 1978) (*en banc*). We cannot believe that the result in *Chadwick* turned on the mere fortuity that the footlocker in that case was found resting in a parked car, rather than in a car that had been stopped by police, as in this case. Nor should it make any difference that the police in this case chose to search the footlockers on the scene rather than waiting until the footlockers had been removed to the police station as in *Chadwick.* In both cases, the footlockers were lawfully in the "exclusive control" of the police when the search occurred. Although the government contended at oral argument that the control in this case was less sure than in *Chadwick* because here the footlockers were not taken to a government building, counsel candidly conceded that there was no danger that the footlockers could have been spirited away from a guard composed of several officers and four police cars.

We therefore hold that the government's failure to obtain a warrant before searching the footlockers cannot be justified and that

---

1. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Preston v. United States,* 376 U.S. 364, 366–67, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); *Cooper v. California,* 386 U.S. 58, 86 S.Ct. 1348, 16 L.Ed.2d 357 (1967); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

2. We do not decide in this case the effect of *Chadwick* on the scope of searches incident to

lawful arrests, *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), because the search here occurred before defendant's arrest and the government has not sought to justify its failure to obtain a warrant by this exception to the warrant requirement. Nor do we decide the effect of *Chadwick* on inventory searches, *South Dakota v. Opperman, supra* note 1, because the objectionable search here occurred before the vehicle was impounded and inventoried.

the marijuana found during the search should have been suppressed.

Our review of the record discloses that the introduction of the marijuana into evidence could not have been harmless error. Accordingly, the judgment of conviction is reversed.

ENGEL, Circuit Judge, dissenting.

I respectfully dissent. Unlike the majority, I am unable to agree that this case cannot and should not be meaningfully distinguished from *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). The footlockers in question were seized and searched at a time concurrent with the apprehension and arrest of defendant Vickers. They were located when seized inside Vickers' automobile which was halted and searched on a ramp turning from an interstate highway onto Briley Parkway, a thoroughfare in the greater Nashville area which led to the Nashville airport. Given the exigent circumstances which then existed, I am of the opinion that the search and seizure might properly be measured by the appropriate law pertaining to automobile searches, *see, e. g., Chambers v. Maroney,* 399 U.S. 42, 46–52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and that *Chadwick, supra,* was not intended to carve an exception to that law. *See United States v. Ochs,* 595 F.2d 1247, 1254–1255 (2d Cir. 1979); *United States v. Gaultney,* 581 F.2d 1137, 1144–45 (5th Cir. 1978); *United States v. Finnegan,* 568 F.2d 637, 640–41 (9th Cir. 1977). *See also United States v. Stevie,* 582 F.2d 1175, 1180–81 (8th Cir. en banc 1978) (Gibson, C. J. dissenting), *petition for cert. filed,* 47 U.S.L.W. 3437 (U.S. Dec. 15, 1978) (No. 78–971). This is particularly true when a search on the highway to determine the presence of marijuana might well have been less intrusive than the alternative (which the majority opinion appears to compel) of requiring both the footlockers and motor vehicle to be transported to a police station before it could be known with certainty that the footlockers contained contraband and that the automobile could be seized.

I would affirm the judgment of the district court.