UNITED STATES of America, Appellee,

v.

Jeffrey. Joseph BENSON, Appellant.

No. 80–1044.

United States Court of Appeals,
Eighth Circuit.

Submitted May 23, 1980.

Decided Sept. 18, 1980.

Rehearing and Rehearing En Banc
Denied Nov. 7, 1980.

Q. Byrum Hurst, Jr., Hot Springs, Ark., for appellant.

Fletcher Jackson, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before GIBSON, Senior Circuit Judge, and HEANEY and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

Jeffrey Benson appeals from his conviction of possession with intent to distribute and conspiracy to distribute cocaine. We reverse the conviction because the warrantless search of Benson's luggage in the absence of exigent circumstances was unreasonable and in violation of the Fourth Amendment.

I

Benson was arrested on August 27, 1979, while sitting in a car parked at the Little Rock Municipal Airport. Sandy Sandefer, who was sitting in the driver's seat of the vehicle, had previously given police information that a "Jeff" would arrive at the airport carrying a quantity of cocaine, and police had undertaken an investigation.

Sandefer had told the police that Benson would be carrying a brown leather or vinyl tote–type bag and that the bag had been used on previous occasions to transport cocaine from "Jeff" to Sandefer. Benson was indeed carrying a brown leather tote bag when Sandefer met him at the airport. Sandefer took Benson to Sandefer's car, a four–door compact station wagon. Benson placed his bag on the passenger side of the back seat of the vehicle and sat down in the front seat on the same side. Sandefer sat down in the driver's seat. He then communicated to the waiting police, by a prearranged signal, his belief that Benson possessed the cocaine.[1]

At that point, four police officers came to the car. They had neither applied for nor received arrest or search warrants. State police narcotics investigator Sanders opened the door alongside Benson and told him that he was under arrest and should get out of the car. Benson made no movement; Sanders repeated the order; Benson still made no movement. As Sanders leaned into the car to remove Benson, Benson turned slightly sideways and moved his arm to the top of the front seat. Sanders physically took Benson out of the vehicle and placed him in a search position with his hands on top of the vehicle. Simultaneously, police detective Hutchinson opened the back door of the vehicle on the passenger side and seized the tote bag. While Sanders was beginning to search Benson, Benson turned around; Sanders immediately put Benson back in the search position and completed searching Benson's person. Detective Hutchinson, meanwhile, had opened Benson's tote bag. In it, he found shaving articles, small cologne bottles, some papers and a small blue drawstring bag bearing the words "Rich Lights." Hutchinson felt the small, blue bag and determined that it contained a soft, powdery substance. He looked in the end of the bag, which was not tightly drawn, and saw a plastic bag con-

---

1. We assume that the informant was reliable and that Benson was properly arrested upon probable cause.

taining a white powder that, on subsequent analysis, proved to be cocaine.

Our concern is whether the warrantless search of Benson's tote bag was constitutionally permissible.

## II

■ The Fourth Amendment requires that "normally searches of private property be performed pursuant to a search warrant issued in compliance with the warrant clause." *Arkansas v. Sanders,* 442 U.S. 753, 758, 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235, 241 (1979). This requirement is not a technicality; it "reflects the 'basic constitutional doctrine that individual freedoms will best be preserved through a separation of powers and division of functions among the different branches and levels of Government.'" *Id.* (quoting *United States v. United States District Court,* 407 U.S. 297, 317, 92 S.Ct. 2125, 2136, 32 L.Ed.2d 752 (1972)). By requiring that determinations of probable cause and the scope of a search "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime," *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948), we "minimize the risk of unreasonable assertions of executive authority." *Arkansas v. Sanders, supra,* 442 U.S. at 759, 99 S.Ct. at 2950, 61 L.Ed.2d at 241.

■ Some exceptions to the warrant requirement exist; however, they are "jealously and carefully drawn," *Jones v. United States,* 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958), and "the burden is on those seeking the exemption to show the need for it." *United States v. Jeffers,* 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951). Further, the Court has "limited the reach of each exception to that which is necessary to accommodate the identified needs of society." *Arkansas v. Sanders, supra,* 442 U.S. at 760, 99 S.Ct. at 2591, 61 L.Ed.2d at 242; *see Mincey v. Arizona,* 437 U.S. 385, 393, 98 S.Ct. 2408, 2414, 57 L.Ed.2d 290 (1978); *United States v. Chadwick,* 433 U.S. 1, 15, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538 (1977). One exception that has been sustained is the so-called "automobile exception," which authorizes police to stop an automobile on the street or highway if they have probable cause to believe it contains contraband or evidence of a crime. *See United States v. Martinez-Fuerte,* 428 U.S. 543, 561–562, 96 S.Ct. 3074, 3084–3085, 49 L.Ed.2d 1116 (1976); *Carroll v. United States,* 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1925). This exception has, in certain instances, been extended to searches of "some integral part of the automobile." *Arkansas v. Sanders, supra,* 442 U.S. at 763, 99 S.Ct. at 2592, 61 L.Ed.2d at 244. *See, e. g., South Dakota v. Opperman,* 428 U.S. 364, 366, 96 S.Ct. 3092, 3095, 49 L.Ed.2d 1000 (1976) (glove compartment). It does not, however, extend to the search of luggage seized from automobiles in the absence of some other exigency. *Arkansas v. Sanders, supra; United States v. Stevie,* 582 F.2d 1175 (8th Cir. 1978), *cert. denied,* 443 U.S. 911, 99 S.Ct. 3102, 61 L.Ed.2d 876 (1979). Luggage because of its nature as a "common repository for one's personal effects, * * * is inevitably associated with the expectation of privacy." *Arkansas v. Sanders, supra,* 442 U.S. at 762, 99 S.Ct. at 2592, 61 L.Ed.2d at 244; *see id.,* n.9; *United States v. Chadwick, supra,* 433 U.S. at 13, 97 S.Ct. at 2484.

*United States v. Chadwick, supra,* and *Arkansas v. Sanders, supra,* held the warrantless searches of a footlocker and a suitcase, respectively, to be constitutionally impermissible. Relying on one or both of those cases, the courts have held illegal the warrantless searches of a variety of "types of containers normally associated with personal luggage," *United States v. Ross,* No. 79–1624 (D.C.Cir., Apr. 17, 1980), including a

suitcase,[2] a briefcase,[3] a duffle bag,[4] a backpack,[5] a leather pouch,[6] and a portfolio.[7]

We feel that Benson had a justifiable expectation of privacy in the contents of his brown leather tote bag. Although the bag was fairly small and unlocked, its "fundamental character as a repository for personal, private effects"[8] is unchanged. In the absence of exigent circumstances, the search of the bag without a warrant violated the Fourth Amendment.

### III

The government contends, nevertheless, that the search of Benson's luggage was proper because it was incident to his arrest, see *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), and because the bag may have contained contraband that the defendant could destroy or weapons that he could use against the police. *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

In *United States v. Stevie, supra,* we held that the warrantless search of a suitcase in the rear of the station wagon in which defendants were riding was not justified as incident to their arrest, because the suitcase had come under the officers' control and no exigent circumstances required a search at the scene of the arrest. 582 F.2d at 1180. In *United States v. Schleis*, 582 F.2d 1166 (8th Cir. 1978), we invalidated the warrantless search of Schleis' briefcase at the station house after his arrest "because the search * * * came after the briefcase had come under the exclusive control of the police * * *." *Id.* at 1172. We stated:

*Chadwick* establishes * * * that the justification for a search under *Chimel* evaporates once the officers seize the luggage or other personal property and reduce it to their exclusive control. *United States v. Jackson*, [576 F.2d 749 (8th Cir. 1978)]. As the Court held in *Chadwick*, warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the "search is remote in time or place from the arrest," * * * or no exigency exists. Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest. *United States v. Chadwick, supra*, 433 U.S. at 15, 97 S.Ct. at 2485.

*Chadwick* establishes that the critical factor is the extent to which the property is within the control of the law enforcement officers, rather than the amount of time or space between the arrest and the search. *United States v. Ester*, 442 F.Supp. 736, 739 (S.D.N.Y.1978). *Once the officers obtain exclusive control, the requirement for a warrant under Chadwick is triggered. Ordinarily, the initial seizure at the time of arrest would be sufficient to place the property within the officers' exclusive control. To otherwise interpret Chadwick "would enable*

---

2. *E. g., United States v. Montano,* 613 F.2d 147 (6th Cir. 1980) (per curiam); *United States v. Stevie,* 582 F.2d 1175 (8th Cir. 1978).

3. *United States v. Presler,* 610 F.2d 1206 (4th Cir. 1979); *United States v. Schleis,* 582 F.2d 1166 (8th Cir. 1978); *cf. United States v. Haley,* 581 F.2d 723 (8th Cir.), *cert. denied,* 439 U.S. 1005, 99 S.Ct. 618, 58 L.Ed.2d 681 (1978) (exigent circumstances; defendant was unconscious and police sought identification or medical alert cards).

4. *United States v. Johnson,* 588 F.2d 147 (5th Cir. 1979).

5. *United States v. Meier,* 602 F.2d 253 (10th Cir. 1979).

6. *United States v. Ross,* No. 79–1624 (D.C.Cir., Apr. 17, 1980).

7. *United States v. Miller,* 608 F.2d 1089 (5th Cir. 1979).

8. In the present case, respondent's comparatively small unlocked suitcase also had been placed in the trunk of an automobile and was searched without a warrant by police acting upon probable cause. We do not view the difference in the sizes of the footlocker and suitcase as material here; nor did respondent's failure to lock his suitcase alter its fundamental character as a repository for personal, private effects.
*Arkansas v. Sanders,* 442 U.S. 753, 762 n.9, 99 S.Ct. at 2592, 61 L.Ed.2d 235, 244 n.9 (1979).

police and federal agents to circumvent the *Chadwick* holding by encouraging them to conduct a search of luggage at the time and location of the seizure in conjunction with a lawful arrest." Note, *Criminal Procedure–Search and Seizure– Persons Lawfully Arrested for Alleged Possession of Narcotics have a Privacy Interest in a Footlocker in Their Possession at the Time of Their Arrest which is Protected by the Warrant Clause of the Fourth Amendment. United States v. Chadwick*, 6 Am.J.Crim.Law 81, 94 (1978) * * *.

*United States v. Schleis, supra*, 582 F.2d at 1171–1172 (emphasis added).

In *Arkansas v. Sanders, supra*, the Court reiterated this proposition. It determined that no exigency of mobility was present where the defendant was in custody and the luggage was in the officers' control, saying, "the exigency * * * must be assessed at the point immediately before the search– after the police have seized the object to be searched and have it securely within their control." 442 U.S. at 763, 99 S.Ct. at 2593, 61 L.Ed.2d at 244–245.

At the outset, we must distinguish the seizure of the tote bag, which is constitutionally unobjectionable, from the search of the bag itself. The Court in *Sanders* also noted that distinction, saying, "Having probable cause to believe that contraband was being driven away in the taxi, the police were justified in stopping the vehicle, searching it on the spot, and seizing the suitcase they suspected contained the contraband. * * * The only question, therefore, is whether the police, rather than immediately searching the suitcase without a warrant, should have taken it, along with respondent, to the police station and there obtained a warrant for the search." *Id.,*

442 U.S. at 761–62, 99 S.Ct. at 2592, 61 L.Ed.2d at 243–244.

We have carefully examined the record, including the testimony of the officers who seized Benson and searched his luggage, and conclude that the officers should have obtained a warrant before searching the tote bag. The bag was not "immediately associated with the person of the arrestee," *United States v. Chadwick, supra*, 433 U.S. at 15, 97 S.Ct. at 2485, either at the time the luggage was seized or at the time it was searched. At the time the tote bag was seized, Benson was seated in the front seat of the vehicle and the bag was in the back seat.[9] At the time the tote bag was searched, Officer Sanders had removed Benson from the car and had placed him in a search position outside the car. Officer Hutchinson had seized the bag from the back seat of the vehicle. The bag was clearly under Officer Hutchinson's exclusive control at the time he opened and searched it, and there was no longer any danger that Benson might gain access to the bag to destroy evidence or grab a weapon. Benson had no accomplices who might have opened the bag to remove weapons or contraband,[10] and there is no allegation that the bag held "instrumentalities which could be dangerous even when sitting idly in the police locker." *United States v. Bloomfield*, 594 F.2d 1200, 1203 (8th Cir. 1979). Once the police officers seized the bag and exercised exclusive control over it, they should have delayed searching it until judicial approval had been obtained.

Accordingly, Benson's convictions are reversed.

FLOYD R. GIBSON, Senior Circuit Judge, dissenting.

The factual circumstances attendant to the arrest of Jeffrey Benson remove the

---

9. In *United States v. Garcia*, 605 F.2d 349 (7th Cir. 1979), the Seventh Circuit upheld, as incident to arrest, a warrantless search of defendant's suitcases. At the time she was stopped by the police, she was carrying the suitcases. At the time of the search, she was standing one foot from them. As noted in *United States v. Presler*, 610 F.2d 1206, 1213 n.8 (4th Cir. 1979), it is doubtful whether *Garcia* can be reconciled with *Sanders*.

10. In *United States v. Matlock*, 558 F.2d 1328, 1330–1331 (8th Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 218, 54 L.Ed.2d 152 (1977), we approved the warrantless search of an open briefcase that was in the immediate control of the arrestee's wife and daughter. Two guns had already been found and the arrest and search took place in a van at night.

search of Benson's tote bag from the ambit of the recent container cases relied upon by the majority opinion. *See Arkansas v. Sanders*, 442 U.S. 753, 763 n.11, 99 S.Ct. 2586, 2593, 61 L.Ed.2d 235 (1979); *United States v. Chadwick*, 433 U.S. 1, 14–15, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538 (1977). This case involves a search incident to arrest wherein the tote bag was in the "immediate control" of Benson at the time of his arrest. The relevant standards for such searches are found in *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) and *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Under *Chimel, id.* at 763, 89 S.Ct. at 2040, a search incident to an arrest may include not only the person involved but also "the area into which an arrestee might reach in order to grab a weapon or evidentiary items * * *." The Court construed the area "within his immediate control" to mean "the area from within which he might gain possession of a weapon or destructible evidence." *Id.* Since the tote bag was within Benson's immediate control at the time the officers approached him, both the seizure and subsequent search of the bag were proper.

The majority opinion fails to distinguish a warrantless search incident to arrest from probable cause to engage in a warrantless search of an automobile when no probable cause to arrest an occupant exists. Justice Blackmun, in his dissenting opinion in *Arkansas v. Sanders, supra*, 442 U.S. at 771–72, 99 S.Ct. at 2597, foresaw the confusion that the *Chadwick–Sanders* rules may engender:

> The impractical nature of the Court's line–drawing is brought into focus if one places himself in the position of the policeman confronting an automobile that properly has been stopped. In approaching the vehicle and its occupants, the officer must divide the world of personal property into three groups. If there is probable cause to arrest the occupants, then under *Chimel v. California*, 395 U.S. 752, [89 S.Ct. 2034, 23 L.Ed.2d 685] (1969), he may search objects within the occupants' immediate control, with or without probable cause. If there is probable

cause to search the automobile itself, then under *Carroll* and *Chambers* the entire interior area of the automobile may be searched, with or without a warrant. But under *Chadwick* and the present case, if any suitcase–like object is found in the car outside the immediate control area of the occupants, it cannot be searched, in the absence of exigent circumstances, without a warrant.

> The inherent opaqueness of these "principles," in terms of the policies underlying the Fourth and Fourteenth Amendments, and the confusion to be created for all concerned, are readily illustrated. * * * *Or suppose there is probable cause to arrest persons seated in the front seat of the automobile, and a suitcase rests on the back seat. Is that suitcase within the area of immediate control, such that the Chadwick–Sanders rules do not apply? Or suppose the arresting officer opens the car's trunk and finds that it contains an array of containers–an orange crate, a lunch bucket, an attache case, a duffelbag, a cardboard box, a backpack, a tote–bag, and a paper bag. Which of these may be searched immediately, and which are so "personal" that they must be impounded for future search only pursuant to a warrant?* The problems of distinguishing between "luggage" and "some integral part of the automobile," *ante*, at 763, [89 S.Ct. at 2040]; between luggage that is within the "immediate control" of the arrestee and luggage that is not; and between "personal luggage" and other "containers and packages" such as those most curiously described, *ante*, at 764–65, n. 13, [89 S.Ct. at 2040–41], will be legion. The lines that will be drawn will not make much sense in terms of the policies of the Fourth and Fourteenth Amendments. And the heightened possibilities for error will mean that many convictions will be overturned, highly relevant evidence again will be excluded, and guilty persons will be set free in return for little apparent gain in precise and clearly understood constitutional analysis. [Emphasis added.]

The majority opinion in *Sanders* expressly recognized this distinction.

> Nor do we consider the constitutionality of searches of luggage incident to the arrest of its possessor. See, *e. g., United States v. Robinson*, 411 U.S. 218, [94 S.Ct. 467, 38 L.Ed.2d 427] (1973). The State has not argued that respondent's suitcase was searched incident to his arrest, and it appears that the bag was not within his "immediate control" at the time of the search.

*Arkansas v. Sanders, supra*, 442 U.S. at 763–64 n.11, 99 S.Ct. at 2593.

In the present case there was ample evidence presented that the informant was reliable and that Benson was properly arrested upon probable cause. *See Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959). The question then remains whether the tote bag was in Benson's "immediate control." The district court, implicitly, found this to be the case. The majority's reiteration of the facts supports this finding.

Benson was observed carrying the tote bag with him into the car, a Honda station wagon. The police officers approached the door alongside Benson and told him to get out. "Benson made no movement; Sanders repeated the order; Benson still made no movement. As Sanders leaned into the car to remove Benson, Benson turned slightly sideways and moved his arm to the top of the front seat. Sanders physically took Benson out of the vehicle and placed him in a search position with his hands on top of the vehicle. Simultaneously, police detective Hutchinson opened the back door of the vehicle on the passenger side and seized the tote bag." *Ante* at 1337. The officers then searched both the bag and Benson. In the bag they found a draw bag labeled "Rich Lights," a brand of cigarettes. From the outside, the contents felt powdery. One of the officers then inspected the bag. Finally, the officers found a knife on Benson's person.

To repeat, the district court specifically found, as a finding of fact, that "[a]s the officers approached the [Honda] vehicle the man turned and reached for the brown bag

he had been carrying." Anyone who has ever sat in the back seat of a Honda, even a station wagon, has realized the extremely close proximity of the back seat to the front seat. There can be no doubt that a person sitting in the front seat of a Honda can easily grab or "reach in" a bag resting on the back seat. The luggage involved was not a locked and latched suitcase or trunk, *see United States v. Schleis*, 582 F.2d 1166 (8th Cir. 1978), but rather an easily opened tote bag. It would be foolhardy for an arresting officer not to seize and search an "area into which an arrestee might reach in order to grab a weapon or evidentiary items," *Chimel, supra*, 395 U.S. at 763, 89 S.Ct. at 2040. Furthermore, the officer's suspicion that Benson might be carrying a weapon was confirmed; a knife was found on his person.

It is important to distinguish a warrantless search incident to arrest from the automobile exception to the necessity for obtaining a warrant when probable cause exists to search the vehicle but not arrest the occupant. In a search incident to an arrest, the privacy interests of the arrestee have already been invaded by the arrest. Furthermore, the "danger to an officer is far greater in the case of the extended exposure which follows the taking of a suspect into custody" than in *Terry*–type stops involving automobiles. *United States v. Robinson*, 414 U.S. at 234–35, 94 S.Ct. at 476.

When Benson reached for the tote bag, the officers had the right to seize and search. Under the majority's analysis, *ante* at 1340, Benson would have to have been *successful* in his attempt to grab the bag before it could be seized and searched. This simply is not the definition of "immediate control" under *Chimel, supra* at 763, 89 S.Ct. at 2040; *ante* at 1341, which includes that "area into which an arrestee might reach in order to grab a weapon or evidentiary items * * * ."

Finally, the majority opinion emphasizes that at the time the bag was "searched," as opposed to "seized," the bag was under the exclusive control of one of the officers and therefore there was no longer any danger that Benson might gain access to the bag.

This fact, however, the Supreme Court has held, does not render the search invalid. In *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), an individual was searched incident to an arrest. In a search of his person, the officer came across a cigarette package. *After removing* it from the arrestee's pocket, the officer felt the package and knew that it did not contain cigarettes. The officer then opened the package and found heroin. The Court ruled upon the search, finding:

> Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that Jenks did not indicate any subjective fear of the respondent or that he did not himself suspect that respondent was armed. Having in the course of a lawful search come upon the crumpled package of cigarettes, he was entitled to inspect it; and when his inspection revealed the heroin capsules, he was entitled to seize them as "fruits, instrumentalities, or contraband" probative of criminal conduct. *Harris v. United States*, 331 U.S., at 154–155, 67 S.Ct. 1098, 91 L.Ed. 1399; *Warden v. Hayden*, 387 U.S. 294, 299, 307, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); *Adams v. Williams*, 407 U.S. at 149, 92 S.Ct. 1921, 32 L.Ed.2d 612.

*United States v.. Robinson*, 414 U.S. 218, 236, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (footnotes omitted).

The same reasoning applies in Benson's case. The officer seized the bag within Benson's "immediate control." He then inspected it and found a draw bag labeled "Rich Lights," ironically a brand of cigarettes. The officer felt the bag from the outside and believed it contained a powdery substance, obviously not cigarettes. He then proceeded to open the bag and confirm his belief that a powdery substance was inside. This type of search was specifically held permissible under the Fourth Amendment in *United States v. Robinson*. The language from *United States v. Chadwick*, 437 U.S. at 15, 97 S.Ct. at 2476, quoted by the majority, *ante* at 1339, is simply inapplicable to the present case, but is indicative of the confusion caused by *Chadwick* in enforcing the criminal laws.

In *Chadwick*, the Court specifically found that "the footlocker was not within the respondent's immediate control." 433 U.S. at 14, 97 S.Ct. at 2485. The Court then went on to cite *Chimel* and *United States v. Robinson* for the proposition that searches of areas within the immediate control of the arrestee are valid whether or not there is probable cause to believe that the person may have a weapon or is about to destroy evidence. The court did caution, however, that warrantless searches of "luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the 'search is remote in time or place from the arrest.'" *Id.* at 15, 97 S.Ct. at 2485, *see ante* at 1339, 1340. Here the Court was distinguishing the case before it, where the footlocker was *not* in the immediate control of the arrestee at the time of the arrest when the footlocker was seized, from the *Chimel–Robinson* situation when the property was within the arrestee's immediate control.

In this case there was actually no reason to search Benson unless the police had probable cause to believe Benson did have possession of narcotics. For all concerned, Benson, the police, and the public, it is better to view this warrantless search as reasonable under the strictures of the Fourth Amendment, which holds unlawful only "unreasonable searches and seizures." If the search of the tote bag produced what appeared to be narcotics, Benson would continue under arrest and he would be held to account for his undoubted criminal activities. If, on the other hand, the search proved negative, he would in all probability be then and there released and free to go about his business. In turn the police and the courts would also be free to pursue other matters, thus adding to their efficiency and the common weal. More important, under the apparent view of the majority that there can never be a warrantless search of luggage or any container–type article where the police officer has obtained possession of that article, the police are effectively handicapped from finding weapons or contraband that are in some type of container within the arrestee's immediate

1344

control. Obviously the police must obtain possession of any container-type article before it can be searched, and if the view is taken that once it is in the officer's exclusive possession the long, tedious process then comes into play of a trip to the police station, a search for a "detached" magistrate, the application for a search warrant, and a possible hearing before the magistrate, this effectively removes the police officers from carrying on their assigned duties of enforcing the criminal laws. One can only conjecture as to the number of warrants needed in a particular case, given the number of "containers" an arrestee may have in his "immediate control" at the time of arrest, in which evidence or a weapon might be concealed.

To my mind, the search in this case was certainly a reasonable one, given the fact that probable cause existed to arrest Benson. If the highly refined interpretation of reasonable searches under the Fourth Amendment by the courts cannot accommodate a search of this type, the public has good cause to question the fairness and efficacy of our criminal enforcement system.

, I would find the search of the tote bag valid and, therefore, would affirm the District Court.